IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WADE CHRISTENSEN,<br><br>        Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA, FORSGREN ASSOCIATES, INC., JAY DIGS, INC.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:05CV55DAK |

This matter is before the court on Defendant United States of America's Motion for Summary Judgment, Defendant Jay Digs Inc.'s Motion for Summary Judgment, and Defendant Forsgren Associates, Inc.'s Motion for Summary Judgment. The court held a hearing on these motions on March 22, 2007. At the hearing, Plaintiff was represented by Jacquelynn D. Carmichael, the United States was represented by Jeannette Swent, Jay Digs was represented by Joseph E. Minnock, and Forsgren Associates was represented by Lincoln Harris. The court has reviewed the memoranda submitted, the exhibits, and the law and facts relevant to the motions. Now being fully advised, the court renders the following Order granting summary judgment for all three remaining Defendants.

BACKGROUND

On April 6, 2003, Plaintiff Wade Christensen was herding cattle when his horse allegedly tripped over an exposed grounding wire attached to an adjacent power pole. The United States Army Corps of Engineers owns and maintains the power pole, which is located on an easement that crosses a 10,000 acre parcel of land owned by the

Grantsville Soil Conservation District.  The Soil Conservation District leases the land to a cooperative of ranchers who have formed a grazing association.

Christensen states that he was invited to herd the cattle by the sons of Bruce Clegg, who was Chairman of the Soil Conservation District and owner of the grazing association that leases the property.  According to Clegg, "[t]here's quite a bit of public traffic" on the conservation district's land and "[t]he public is not invited, but they're not restricted."

Christensen was not paid for herding the cattle that day.  He had volunteered to help "to get out and go for a ride and let [his] little girl go herd cows."  Another rider immediately in front of Christensen had no problem with the wire.  But, Christensen's horse was tripped, and Christensen fell off the horse.  Christensen alleges that he tore an artery in his neck, which later caused him to have a stroke.

Approximately ten years before the accident, in 1993, the United States government agreed to remediate a plume of allegedly contaminated groundwater near the Tooele Army Depot.  The United States agreed to install wells to remove the contaminated water, decontaminate it, and then reinject the clean water back into the ground.  Many of these wells were on the property owned by the Grantsville Soil Conservation District.

For the sum of $22,500, the District granted an easement to the United States for installation of groundwater remediation wells and the overhead electrical lines necessary to provide power to the system.  The Army Corps of Engineers retained Metcalf & Eddy to construct the groundwater remediation system.  Metcalf & Eddy then subcontracted with TPC Construction to install the overhead power lines.  TPC erected the power poles

and affixed the associated components and wires. The specifications for the grounding rods required that the second grounding rod be located at least six feet apart and buried two feet deep.

In 2003, Tooele County obtained from the United States a thirty-foot wide easement to run an underground water line along the roadway. Tooele County hired Forsgren Associates Inc. as the engineers for the pipeline project and Forsgren Associates facilitated the easement from Tooele Army Depot. Ben White, an engineer and project manager at Forsgren was the design engineer on the project. Forsgren oversaw quality control of the water pipeline project. George Wolford, a Forsgren employee, was on site for the majority of the construction to ensure that the pipeline was constructed in accordance with contract specifications.

Tooele County contracted with Jay Digs, Inc. to install the water line. Jay Digs installed the line by using a trencher to dig a trench 30 inches wide before connecting the 16 inch pipe. The water line is 21 feet from the power pole in question.

Jay Heiselt, the owner of Jay Digs, testified that his company did not encounter any grounding wires or rods while digging the trench for the water line. Witnesses involved in the construction of the water pipeline have all testified that there was no excavation and no need to excavate in the area near the power pole. The project manager and excavation workers who were onsite at the water pipeline project almost every day do not recall seeing an exposed grounding wire themselves or hearing that anyone else saw an exposed grounding wire before Christensen's accident. Forsgren Associates also did a visual observation at the end of the pipeline job to insure that the site was properly cleaned up and that all the facilities were constructed pursuant to the specifications.

Prior to the accident, the 7C Livestock Company, owned by Bruce Clegg, was using the District's property for grazing approximately 150 cattle. After the accident, Bill Parsons of TPC returned to the scene and dug up the ends of the grounding wire. He found two grounding rods five feet apart and a big coil of wire. Parsons believes the rods were moved after his company installed the rods and speculates that it may have occurred during the installation of a concrete vault used to pull wires or during the installation of a water pipeline by Jay Digs, Inc. However, he has no personal knowledge about either of the projects.

Christensen has sued the United States under the Federal Tort Claims Act. He has sued Defendant Jay Digs, Inc. for negligence in moving the grounding rod and allowing the grounding wire to surface and cause his horse to trip and fall. Christensen has also sued Forsgren Associates Inc. for negligence. All three defendants have moved for summary judgment.

## United States' Motion for Summary Judgment

The Federal Tort Claims Act authorizes actions against the United States for damages caused by the negligence of government employees under circumstances where a private person would be liable under state law. 28 U.S.C. § 1346(b); 28 U.S.C. § 2674. The FTCA provides that the United States is liable to the same extent as a private individual in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). Accordingly, the United States can be found liable here only to the same extent that a private individual would be found liable pursuant to Utah law.

Christensen must establish that (1) the United States owed him a duty, (2) it breached that duty, (3) the breach was the proximate cause of the injury, and (4) he

suffered injuries or damages resulting from the breach. *See Webb v. University of Utah*, 125 P.3d 906, 909 (Utah 2005). Where there is no duty, "there can be no negligence as a matter of law and summary judgment is appropriate." *Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004). The existence of a duty is "entirely a question of law to be determined by the court." *Id.* at 923-24.

Christensen argues that the duties of care owed to him on the land were owed to him by the United States as the dominant tenant and/or easement holder. The "duty to maintain and repair structures or facilities existing under an easement rests on the dominant, not the servient landowner." *Sutera v. Go Jokir*, 86 F.3d 298 (2d Cir 1996). The United States has admitted during discovery that the District shared no responsibility for the construction, operation, maintenance, repair, patrol, and/or servicing of the power poles located on the subject easement and that the Tooele Army Depot maintained the exclusive control, maintenance and servicing of the power pole.

Utah courts follow the Restatement (Second) of Torts, under which "a property owner's duty to a person injured on his property is determined by that person's status on the property as either an invitee, a licensee, or a trespasser." *Feichko v. Denver & Rio Grande Western R.R.*, 213 F.3d 586, 593 (10th Cir. 2000). An invitee is "one who goes upon the premises of another . . . at the invitation of the owner," whereas, a licensee has no such invitation, but goes on the land of another with the express or implied permission of the landowner. *Stevens v. Salt Lake County*, 478 P.2d 496, 498 (Utah 1970).

The parties dispute whether Christensen was an invitee or a licensee on the land. Christensen argues that he was an invitee. In *Hayward v. Downing*, the Utah Supreme Court stated that an invitee is one who goes upon the premises of the owner or occupant

for the purpose of transacting business or for the mutual benefit of each of them or for the benefit of the occupant.  189 P.2d 442, 513 (Utah 1948).

There is no dispute that the United States did not invite him onto its easement and there was no benefit to the United States as a result of his presence on the property. While Christensen claims that it is the United States that owes him a duty, he relies on an invitation from the Soil Conservation District to assert that he was an invitee. Christensen was invited by the sons of Bruce Clegg to assist with herding cattle from the District's property in order to ensure that the property did not become over-grazed. Plaintiff asserts that it is the primary business purpose and responsibility of the Soil Conservation District to manage its grazing leases in such a way as to make sure that the cattle grazing on the land are moved from time to time.

The United States asserts that Christensen came onto the Conservation District's land and onto the United States' easement across that land without any invitation or participation from the landowners.  The chairman of the Conservation District specifically testified that the public "is not invited [onto this land], but they're not restricted."  According to Clegg and Christensen, Christensen herded cattle on the property that day not because it was his job or for any other business purpose, but "just to ride his horses," "to get out and go for a ride."

Even so, the United States asserts that Christensen cannot demonstrate a breach of duty under either the invitee or licensee standards.  Assuming that Christensen was an invitee at the time of the accident and that the owner of an easement owes an invitee the same duty of care that the landowner would, the United States would be subject to liability only if it breached the duty of care owed to an invitee under Utah law.  That

legal standard subjects the possessor of land to liability "if, but only if, he . . . knows or by exercise of reasonable care would discover the [dangerous] condition." *Hale v. Beckstead*, 116 P.3d 263, 266 (Utah 2005).

In negligence cases arising out of "temporary unsafe conditions," Utah law requires the plaintiff to show that the defendant had actual or constructive knowledge of the condition and that sufficient time elapsed after such knowledge that "in the exercise of reasonable care [the defendant] should have remedied it." *Schnuphase v. Storehouse Markets*, 918 P.2d 476, 478 (Utah 1996).

Plaintiff admits that no United States employee knew that the grounding wire was exposed before Christensen's accident. Thus, the United States could be liable here only if it failed to exercise reasonable care to discover the exposed grounding wire or had constructive knowledge of the problem and sufficient time to remedy it.

The United States contends that it exercised reasonable care here by relying on the excavating crew and project engineer to report any problems. Christensen admits that if any of these contractors had observed the exposed wire, they should have reported it. Moreover, Christensen's expert would not fault the United States for relying on these contractors to monitor the job site daily.

The Utah Supreme Court has held that "[i]f a plaintiff alleges that a defendant negligently failed to remedy a dangerous condition that the defendant did not create . . . then evidence of notice and a reasonable time to remedy are required to survive a motion for summary judgment." *Goebel v. Salt Lake City Southern R.R. Co.*, 104 P.3d 1185, 1193-94 (Utah 2005). Christensen admits that the United States had no actual notice of the exposed grounding wire, and he has not addressed, much less refuted the United

States' argument that it lacked constructive knowledge of an exposed grounding wire. Instead of addressing constructive notice, Christensen argues that the Untied States had reason to know of the exposed wire. However, none of his alleged "reasons to know" constitutes evidence of notice to satisfy the legal requirement set out in *Goebel*.

Christensen argues that the United States had reason to know about the exposed grounding wire because employees were in the area of the subject power pole for the purpose of inspecting the United States' easement shortly before Christensen's accident. This is incorrect both as to the area inspected and the time frame. The closest area to the power pole that McFarland inspected was 50 to 75 feet away. Nelson inspected only to see that the excavation area (approximately 19 feet away) was properly cleaned up after the water pipeline project was complete and, thus, it was after Christensen's accident.

Christensen also argues that McFarland's and Nelson's inspections make this case very similar to *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir. 1978). However, this would not be true even if Nelson's inspection had occurred before Christensen's accident. In *Madison*, there was a downed power line and there was evidence that the defendant's foreman had driven that highway several times each day while the line was down. *Id.* at 1035-36. In contrast, the single piece of evidence in this case that the wire was visible before the accident comes from Clegg who testified that he was "pretty sure" he saw the wire and he is "pretty sure" that he remembers his horse stepping over it.

Christensen also argues that the United States had reason to know of the exposed grounding wire because it had the specifications for the electrical distribution system and because it knew that the contractors were using heavy equipment for the water pipeline

8

installation. However, Christensen explicitly relies on speculation rather than evidence of notice, asserting only that the United States had reason to know that the grounding wires "could potentially be disturbed" by work on the water pipeline project. The legal standard for defeating summary judgment requires actual evidence of notice of a dangerous condition rather than mere speculation that such a condition "could potentially" arise.

There is no evidence that the United States had actual or constructive knowledge of an exposed grounding wire with time to remedy the condition before Christensen's accident. A private person would not be liable on these facts under Utah law.

Christensen argues that notwithstanding his status on the land, the United States had a duty to maintain its power poles and lines in a safe condition and negligently failed to do so. Christensen urges the court to find a heightened duty of care citing cases involving electrocutions. In the first case, the problem had existed for 33 days and could be detected from the road and by a person riding in an automobile. *James v. Southern Utah Power Co.*, 150 P.2d 376, 377, 379 (Utah 1944). The second case held that the owner and operator of the uninsulated "hot" wire had a duty to exercise "exceptional" care to protect persons from injury caused by its electrical system. *Godesky v. Provo City Corp.*, 690 P.2d 541, 547 (Utah 1984). However, the court also noted that "the degree of care must be equal to the degree of danger involved." *Id.* at 548.

Courts have declined to hold electrical utilities to a heightened duty of care where the danger does not involve live wires. One such court recently reversed a decision to apply a heightened duty of care where a truck driver struck a dead electrical transmission line which sagged above the roadway following an ice storm. *See McFarland v. Entergy*

*Mississippi*, 919 So.2d 894 (Miss. 2005).  The Mississippi Supreme Court held that "[t]he degree of care that is reasonable will either increase or decrease based upon various circumstances.  When circumstances involve live wires, we hold that the reasonable standard of care is elevated to one of a high degree.  However, if electricity is not present, the utility company should exercise 'reasonable care.'" *Id.* at 899.  Other courts have noted that "the standard of care varies according to the danger posed by the utility's activity.  If the danger is minimal, the utility is held to conventional negligence concepts." *Keegan c. Grant County Pub. Util. Dist.*, 661 P.2d 146, 149 (Wash. Ct. App. 1983).

In this case, Christensen's horse allegedly tripped over a grounding wire and neither the horse nor Christensen suffered from contact with electrical current.  The circumstances of this case do not involve a degree of danger that would justify a heightened standard of care.  Accordingly, the court concludes that Christensen has not shown a breach of the duty owed to him.  Therefore, the court grants summary judgment in favor of the United States.

### Defendant Jay Digs Inc.'s Motion for Summary Judgment

Christensen claims that Defendant Jay Digs, Inc. negligently moved the grounding rod and allowed the grounding wire to surface, which caused his horse to trip and fall. Jay Digs argues that it is entitled to summary judgment because Plaintiff's claims against it are premised on speculation.  Jay Digs contends that there is no evidence as to the cause of the grounding wire being exposed and no evidence to conclude that it moved the grounding rod.

      While circumstantial evidence is clearly admissible, the Tenth Circuit has cautioned that "[u]nder a federal test of the sufficiency of circumstantial evidence, an inference must not be based on conjecture, speculation, or mere possibility." *Menne v. Celotex Corp.*, 861 F.2d 1453, 1463 (10th Cir. 1988).  The case of *Lindsay v. Gibbons & Reed*, 497 P.2d 28 (Utah 1972), cited by Christensen, illustrates the limits of circumstantial evidence.  In affirming summary judgment for the defendant, the court held that "[a] finding of causation cannot be predicated on mere speculation or conjecture, and the matter must be withdrawn from the jury's consideration, unless there is evidence from which the inference may reasonably drawn that the injury suffered was caused by the negligent act of the defendant.  Jurors may not speculate as to possibilities; they may, however, make justifiable inferences from circumstantial evidence to find negligence or proximate cause." *Id.* at 422-23.  The court concluded that "there was a mere choice of probabilities as to why Mr. Lewis was in the wrong lane of traffic, and there was no basis in the evidence upon which the jury could reasonably believe that there was a greater probability he was misled into the opposing lane rather than for some other reason." *Id.*

      In *Mitchell v. Pearson Enterprises, Inc.*, 697 P.2d 240 (Utah 1985), the court concluded that although there were facts from which a jury could conclude that the defendant hotel was negligent for providing poor security for guests, summary judgment was appropriate because there was no evidence linking the alleged negligence to the unsolved murder. *Id.* at 245.  "Demonstrating material issues of fact with respect to defendants' negligence is not sufficient to preclude summary judgment if there is no

11

evidence that establishes a direct causal connection between the alleged negligence and the injury." *Id.*

In the present case, Christensen relies upon the temporal relationship between the installation of the water line by Jay Digs and his accident. Courts, however, have universally rejected the notion of *post hoc ergo propter hoc* as a basis for proving causation. "The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence. . . . It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship." *McClaim v. Metabolife Int'l Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005). The Tenth Circuit has similarly rejected temporal relationships as the basis for establishing causation. *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987).

Absent the temporal proximity argument, Plaintiff has no evidence that the water pipe installation disturbed the grounding wire or rod. Plaintiff's theory against Jay Digs appears to be premised on one of two theories: (1) the grounding rod was located within the area where the trench for the water line was to be dug and so was moved by Jay Digs; and (2) that during installation of the water pipe, a track on the heavy equipment reached down and snagged the wire and pulled it and the rod to the surface.

But there is no evidence to support the essential elements of these theories. There is no evidence that the grounding rod and wire were ever within the easement where Jay Digs was working. No witness has been able to identify where the grounding rod was located prior to allegedly being moved to where it was found by Parsons after the accident. Plaintiff's own expert witnesses have examined the facts and have been unable to reach a conclusion supported by actual evidence of how the grounding rod could have

been disturbed during the excavation. Plaintiff's expert Phillip King reviewed the survey and concluded that the power pole in question was 21 feet from the water line. Plaintiff's other expert, Brad Shepard, found that the track hoe blade could not have hit the grounding rod if the center line of the pipe was 21 feet from the pole. Another Plaintiff expert, Frank Burg, testified that it was not possible for the trencher to dig up the wire during the excavation of the water pipe. He suggested that the grounding wire may have been exposed through a combination of rain, loamy soil, and the weight of the equipment. However, he was unable to locate any evidence to support this theory.

      The only evidence regarding installation of the grounding wire was what would have been typical procedure by the owner of the company who did the installation, not the worker who did the work. The inspector for the Army Corps of Engineers who Christensen claims inspected the pole testified that he performed only spot inspections and he has no recollection of the pole in question. There is also evidence that construction involving the installation of a concrete vault next to the pole occurred that could have unearthed the wire. The area was also always open to the public and used regularly by ranchers. There is no means for eliminating these users as potential causes of the wire being exposed. Given the lack of information as to any of these other potential causes, the jury would be forced to speculate as to how, when, or why the wire was unearthed.

      While Plaintiff has theories or hypotheses as to how the installation of the water line may have disturbed the grounding wire, there is an absence of factual information to support these theories. Perhaps the most telling fact is that after Christensen fell, no one could find any evidence that the area around the pole had been disturbed during

13

construction. No tire or crawler tracts were located. No soil appeared to have been recently dug up. And, there was no evidence that the rod or wire had been recently disturbed or re-buried. There is no evidence from any source that the wire was tangled, dented, bent, or otherwise deformed so as to suggest that it had been torn from the ground in a construction accident.

All that is known about the grounding rod and wire is that it was originally installed in 1993 and Christensen's horse tripped over the wire in 2003. There is no evidence as to where the rod was originally placed, whether the rod or wire was disturbed during the ensuing ten years, or how it appeared prior to the accident. In order to bridge this gap of information, Plaintiff assumes the water line installation disturbed the rod and wire but there is no evidence that the vegetation around the pole differed from the other natural vegetation. The lack of evidence requires judgment as a matter of law. Jurors are not allowed to "'engage in rank speculation to reach a verdict.'" *Clark v. Farmers Ins. Exch.*, 893 P.2d 598, 600 (Utah Ct. App. 1995). The "'result would not be fair, nor just, nor appropriate for any of the parties." *Id.* Because of the complete lack of evidence on causation, the *Clark* court found that the plaintiff had not met his burden of establishing a prima facie case of negligence and the grant of summary judgment appropriate. *Id.* at 601. Similarly, in this case, based on the lack of evidence regarding causation, the court concludes that Jay Digs is entitled to summary judgment.

### Defendant Forsgren Associates' Motion for Summary Judgment

Christensen alleges that Forsgren was negligent in performing its duties with respect to the water pipeline installation, that during the installation of the pipeline a five-

14

foot loop of grounding wire was brought to the surface and left unburied, and that as a proximate result of Forsgren's alleged negligent workmanship, Christensen was injured.

Forsgren argues that it is entitled to summary judgment because Christensen has failed to present prima facie evidence demonstrating a breach of duty and causation. Forsgren claims that there is no evidence from which a jury could conclude that Forsgren did not perform its duties in a workmanlike manner. There is no evidence that Jay Digs moved the grounding rod in performing its duties. Given the evidence uncovered during discovery, a determination as to the cause of the grounding wire being on the surface would be mere speculation. There is no evidence that Forsgren was negligent in any of its duties, or that any actions or alleged omissions by Forsgren proximately caused any of Christensen's injuries.

Summary judgment is the appropriate remedy "when the proximate cause of an injury is left to speculation." *Clark,* 893 P.2d at 601. Specifically, Ben White of Forsgren, Bill Parsons of TCP, Jay Heislet of Jay Digs, Bruce Engerholm of Metcalf & Eddy, Larry McFarland, DeWayne Jacobsen, and Doug Cook from the Tooele Army Depot, each testified that they have no personal knowledge and could only guess as to how the grounding wire became exposed. None of them ever noticed the exposed loop of grounding wire before the accident.

Furthermore, there are no documents, photographs, or other types of evidence offered to establish that Forsgren caused Christensen's injuries. After the job was completed, Forsgren did a visual observation to insure that the site was properly cleaned up.

Christensen's expert, J. Phillip King, admits that there are several possibilities that may have exposed the grounding wire. He admits that he must make several assumptions to reach his conclusion and that several possibilities exist. Other than the testimony of Bill Parsons of TCP Construction, there is no other testimony to indicate that the grounding rods and wire were installed properly to begin with. And, Parsons did not personally do the work. Christensen's experts' testimony amount to unfounded speculation and do not make a prima facie case of negligence.

This case cannot be allowed to go to a jury with evidence that would require speculation to reach a verdict. While it is generally true that a jury is allowed to infer causation and negligence from the underlying operative facts, a jury is not allowed to infer the underlying operative facts. Christensen's claim would require a jury to infer the underlying operative facts and then use those inferred facts to infer causation and negligence. Christensen's position is not supported by case law. Many people have had access to the land since the power poles were installed and there is no evidence to narrow down the potential cause of the exposed grounding wire. There is also no evidence as the whether Forsgren saw or should have seen the grounding wire.

Accordingly, the court concludes that Christensen has not made out a prima facie case against Forsgren, and Forsgren is entitled to summary judgment.

## CONCLUSION

Based on the above reasoning, Defendant United States of America's Motion for Summary Judgment is GRANTED, Defendant Jay Digs Inc.'s Motion for Summary Judgment is GRANTED, and Defendant Forsgren Associates, Inc.'s Motion for Summary Judgment is GRANTED. This case is dismissed in its entirety with prejudice,

each party to bear his or its own fees and costs.  The Clerk of Court is directed to enter judgment in favor of the United States of America, Jay Digs, Inc., and Forsgren Associates, Inc.

DATED this 17th day of May, 2007.

_____
DALE A. KIMBALL,
United States District Judge